(No. 12618.—Reversed and remanded.)
HELENA HOOPER, Admx., Defendant in Error, *vs.* THE
ADAMS EXPRESS COMPANY, Plaintiff in Error.

*Opinion filed June 18, 1919—Rehearing denied October 27, 1919.*

1. NEGLIGENCE—*evidence of rate of speed of vehicle is admissible under count charging negligence of the driver.* In an action to recover for the death of a pedestrian who was run over by a wagon in a crowded street, the withdrawal of a count which expressly charged the driving of the horse and wagon at an unlawful rate of speed does not preclude the plaintiff from relying upon evidence as to the rate of speed to sustain a judgment under another count charging that the defendant negligently caused the vehicle to run over the deceased.

2. SAME—*when evidence must show deceased was in exercise of ordinary care for his own safety.* In an action to recover for the death of a pedestrian who was run over by a wagon while crossing a busy thoroughfare, it is as essential to the plaintiff's right to recover to show that the deceased was in the exercise of ordinary care for his own safety as to show that the defendant was negligent, and where the evidence fails to show such care an instruction to find for the defendant should be given.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

SABATH, STAFFORD & SABATH, (CHARLES B. STAFFORD, and THOMAS M. ZASADIL, JR., of counsel,) for plaintiff in error.

LITSINGER, HEALY & REID, (JAMES J. FINN, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This writ of error brings before us the record of the Appellate Court for the First District, which affirmed a judgment of the circuit court of Cook county for $2500

against the Adams Express Company in favor of the de-
fendant in error for negligently causing the death of her
husband, Montgomery C. Hooper. The error complained of
is that the court refused to direct a verdict for defendant.

The deceased was an interior decorator. While cross-
ing Madison street at Fifth avenue he was struck by a horse
drawing a wagon of the plaintiff in error and driven by one
of its employees. He was knocked down, run over and
received injuries from which he died within a few hours.
The accident occurred about six o'clock in the evening of
June 3, 1914. There were double street car tracks in each
street. The deceased, coming from the west on the south
side of Madison street with George Baskett, a fellow-work-
man, arrived at the southwest corner of Madison street and
Fifth avenue and started to cross the street to the north-
west corner. The traffic was heavy and many people were
walking across. An east-bound street car was standing a
few feet west of the west crossing, discharging passengers.
In front of it, in the railroad track, was a wagon drawn by
a team of ponies. The deceased and his companion started
from the south side of the street about a foot west of the
cross-walk. The deceased was to the left of Baskett and
a little behind him. They went in front of the street car,
between it and the wagon in front of it, and as they were
proceeding north they saw the plaintiff in error's horse and
wagon coming from the east, as Baskett testified, at a pretty
fast trot. The left wheels of the wagon were in the west-
bound track and the right wheels north of it. Baskett called
to Hooper to look out, and both jumped to the northwest
in an effort to get over to the north sidewalk. Baskett was
struck by the north shaft and knocked down on the side-
walk. Hooper, who was slightly behind, was knocked down
by the horse or wagon and run over. The wagon came
from the east, going west on the north side of Madison
street east of Fifth avenue. When it reached Fifth avenue
the traffic was moving north and south in that street and

the wagon stopped in the west-bound street car track, being the first wagon east of Fifth avenue facing west. When the whistle blew for the east and west traffic the driver started his horse and was just coming to the west cross-walk when the east-bound car started.

The declaration consisted of two counts, the first of which charged that the defendant carelessly, wrongfully and negligently caused the horse and wagon to run into and against and strike with force and violence the deceased, and the other charged the driving of the horse and wagon at an unreasonable and unlawful rate of speed. The court withdrew the latter count from the jury. There was no evidence to sustain the other count unless there was evidence of an excessive rate of speed, for no other negligence was shown. Evidence as to the rate of speed was admissible under the count which remained, and the withdrawal of the other count does not preclude the defendant in error from relying upon such evidence to sustain the judgment under the first count.

Another witness besides Baskett testified that the horse was going at a very fast trot. This was John Callaghan, who was standing at the northwest corner of Madison street and Fifth avenue. He was facing east and did not see either Hooper or the horse and wagon before Hooper was struck. His attention was attracted by a cry and he turned and saw the wagon pass over Hooper. There was also testimony as to the distance the wagon traveled after Hooper was struck.

Conceding that in spite of the withdrawal of the count alleging excessive speed the plaintiff was entitled to submit the evidence on that question to the jury under the first count, there yet remains the question of the deceased's contributory negligence. It is as essential to the plaintiff's right to recover to show that deceased was in the exercise of ordinary care for his own safety as to show that the defendant was negligent. Baskett says that he and Hooper

passed in front of the street car, which was standing still. They were not on the cross-walk, where pedestrians may be expected in crossing a street. The motorman, after receiving the signal to go over the crossing, waited for the wagon to proceed far enough ahead to make it safe for the car to start. Just as he was about to start, or after he had started, the car, but before it reached the crossing, two men passed in front of his car, and he paid no more attention to them until he heard a noise as he was about to cross the cross-walk, when he glanced over to the left and saw a horse and wagon going west in the west-bound track. His attention was drawn to the men who had just passed in front of his car, and he saw them pause a moment and jump in a northwesterly direction to avoid being hit and the deceased was knocked down. The distance between the east-bound and west-bound tracks is about five feet, and there was room enough for a man to stand between a car moving one way and a wagon the other. If the men crossed in front of the street car before it started they were off the street crossing as far as the length of the team of ponies and the wagon which were in front of the car. If they did not come in front of the street car until after it had started and had moved over this distance up to the crossing, they were attempting to cross the street among the vehicles moving east and west, which had the right of way at that time, and went between two vehicles, where deceased could not well be seen and could not readily see approaching vehicles. He placed himself in a position where he could not look out for himself and emerged at a place where his presence could not be expected by the driver of a vehicle. The evidence fails to show that in attempting to cross the street at the time and place and in the manner he did the deceased was in the exercise of ordinary care for his own safety, and the instruction to find the defendant not guilty should have been given.

· The judgments of the Appellate Court and the circuit court will be reversed and the cause will· be remanded to the circuit court.          *Reversed and remanded.*

---

(No. 12676.—Judgment affirmed.)
THE PEOPLE *ex rel.* William W. Harding *et al.* Defendants in Error, *vs.* J. E. WILEY. *et al.* Plaintiffs in Error.

*Opinion filed June 18, 1919—Rehearing denied October 10, 1919.*

1. SCHOOLS—*high school district organized under void act of 1911 is neither a de jure nor de facto district.* The invalid Township High School act of 1911 conferred no right to organize a high school district, and any district attempted to be organized thereunder is neither a *de jure* nor a *de facto* district.

2. SAME—*when validating act of 1917 does not apply.* Where a judgment of ouster against the officers of a high school district organized under the void act of 1911 has become final by a failure to prosecute an appeal the validating act of 1917 cannot affect the judgment, and on a subsequent writ of error, which is the beginning of a new suit, the judgment of ouster must be affirmed.